All right. Garten Trucking v. NLRB. Mr. Tower, we're happy to hear from you, sir. Please. Thank you, Your Honors. May it please the Court. My name is King Tower. I'm with Woods-Rogers in Roanoke, and I'm here today on behalf of Garten Trucking in this case of Garten Trucking v. the National Labor Relations Board. For Honors, I know you've reviewed our briefs, and so I'll be brief on in terms of the facts, but there really aren't too many facts, and there really is very little dispute about what took place here. Garten Trucking is in the transportation business. They move paper and other products in Covington, Virginia. And in 2001, there was a union campaign where the Association of Western Pulp and Paper Workers filed a petition to organize the drivers at Garten Trucking. It was a unit of about 109 workers, and a vote was held, and the employees voted overwhelmingly against union representation. About, actually a little more than a year later, after the election, although the exceptions were still being litigated, they still are, the union distributed a flyer to employees. And this flyer made several points. It implied that the union was responsible for wage increases that had taken place recently. It falsely accused the company of picking and choosing who would get raises. Council, I don't mean to cut you off, but we've read some of that, and you're welcome to weave that in. But if you don't mind, I'm going to get to a legal principle. I know you're familiar with it. I'm asking you how we handle that with respect, handle this issue with respect to your position. We have case law that seems to pretty clearly say that we are to defer to the board in terms of whether conduct is coercive. So what do we do with that? I mean, the board determines this is coercive. You know, this last sentence of the statement does, it seems to me, could be read to say that the union is responsible for some failure to get raises. Yeah, that may not make a lot of sense when the election, the vote has happened, and when the raises have been given. I mean, I get that, but I mean, if we're supposed to defer and it could be read that way, what do we do with our precedent? Thank you, Your Honor. I think the answer to that is that the deference that this court should show is not total. And that the board's decision has to be supported by substantial evidence in the record. And I think that, as in the Allentown Mack case, for example, the board is not free to draw whatever inferences it wants. Isn't the statement evidence in the record? It is in the record. So that counts as evidence. Now, you may argue it's unreasonable to interpret that as coercive. That's what you've got to say, right? I mean, that could not be interpreted reasonably in that way? And what we're saying is that even applying an objective standard, as the board seems to focus on, we're not suggesting that you need to subjectively look at the understanding of employees. What we're saying is that the standard is in the totality of these circumstances. And that includes the context for the statement. Was the statement coercive or was it a threat? And our position is that it is not when you take those circumstances into account. So it is still an objective test that we're proposing. We're not suggesting. But do you agree with me that you not only have to convince us that your reading is better, you know, that it's a better reading to say it's not coercive. You have to say it's totally unreasonable to be read otherwise. Well, I are saying that when you look at the totality of the circumstances, that the board has taken a position that is not supported by that totality of the evidence. And so that, you know, particularly, again, in light of Mr. Garton's statement being in response to this flyer that the union distributed, and clearly the primary thrust of it being that the union was not responsible for these raises, and the fact that raises were not delayed, as you the only evidence on that subject is that the raises were actually given in advance of the time that they would otherwise have been scheduled. Chevron case. Um, uh, alter the substantial evidence standard of review. Well, your honor, our view is that section eight C of the act allows employers to engage in speech so long as it is not a threat or a promise. And so I don't know that there's any ambiguity. There's there's an interpretation, but I mean, the substantial evidence standard review. We don't. It seemed to me that Chevron case, um, was directed at the more at the regulatory function, um, of of agencies and the interpretation of statutes in the course of the rule making process. But I think that the adjudicatory function of agencies was it's harder to make the case that overturning Chevron affects the adjudicatory function to the same degree that it affected the regulatory function. And if that's the case, then aren't my colleague's comments, Judge Qualabong's comments, don't they become especially pertinent in terms of the standard of review that we owe to the agency in the NLRB in this case? I think that's right, your honor, that that you could decide that the Loper Bright decision and the overturning of Chevron were relevant to even the adjudicatory function. But if you do not, I you know, our case is not premised on that. Our case is that even under the traditional substantial support of evidence in the record that the board has has committed error here and that it should just a curiosity. But how did you know part of the thing is that your your this statement was in response to some statements that the union is making and the union was making these statements on putting out these pamphlets or whatever. At the same time, the matter is being litigated. So that seemed to me odd that while the matter was pending before the board that the union was continuing to fire up. But it has. The election was already held, wasn't it? More than a year prior, your honor. Why is this going on long after the election has been held? Well, and I think your honor, that's a great question. And it sort of speaks to the the reaction that it prompted from from the company and the hyperbole that that was that followed. And there's definitely some, you know, over the top type statements that are not really part of this other than they show the context of a company official reacting to, you know, why is it that a year after we've had this election, you the union are coming in and acting like we should have been negotiating with you. The timing of the union's comments and the response, the coerciveness inquiry wouldn't necessarily be altered because this was an individual that was a part and he had authority to comment on past wages and the likelihood of future raises. And so the statement, even though it was after the completion of the election, the statement could still be held coercive, could it not? Because it conveyed the message that in the future you better keep this union at bay or you're not going to get your raise. I think you're right, your honor, that the fact that it was this far after the election does not, on some sort of per se basis, mean that it couldn't possibly be a threat. A manager like this, an owner could absolutely... All I'm saying is there's no there's no bar to post election statements being coercive. That's right, that's right. And so if this statement is a threat, it could violate 8A1. And I think that... So what's kind of odd is to follow up on Judge Wilkinson's questions is the union, well, you know, the elections has happened, raises have been given, the union statement seems to be commenting about those raises that have been given. We, they're claiming credit for it. Right. And the response of statement responds to that for seven and a half lines. And I don't think there's any question that that, no challenge to that. But in the last one and a half line, the response is kind of nonsensical. I mean, and it, well, there's two ways to look at it, it seems to me, and this maybe, tell me if this, what your reaction is. On the one hand, it's nonsensical because it's saying, you know, you would have already got your raises if they haven't been getting money, you know, stealing from your paycheck. Well, if they've already gotten their raises, that kind of doesn't make any sense. But does it, could it also be read to say, I have to say, I have a, you know, I have an input in whether you're going to get raises in the future. And could someone read it to say, there's still raises to be considered in the future and this union activity is going, you know, be an impediment to those. Right. So, you see what I'm saying? I do, I understand, Your Honor, and I think that is, the General Council is making that argument, and I think that they are arguing that that is an implication of the final line of that statement. But I think our point is that the Board has otherwise acted like all they have to do is put this statement in the record and the mere utterance itself creates this basically a presumption of a threat. And what we're saying is that that's not the standard. The standard should be taking the totality of the circumstances. Is there a threat that has been communicated? And that involves both the distribution to employees, here the evidence is there were only seven employees who reacted to this post all positively or or at least neutrally. No, no, no, no person testified that I felt. So what does that have to do with anything? I mean, I understand why in the normal world we might think that is evidence, but can we even consider that evidence? Um, you know, there's case law that says, you know, employees are in a position of, um, you know, lesser power. So you can't consider that. Or is it your position that we can consider it? Well, our position is not that they're that their subjective response is dispositive. But we do think that it shows that a reasonable person would not find it threatening in the context of all the facts and the totality of these circumstances, including the ones you mentioned, which is that the statement is sort of nonsensical and hyperbolic in the first place. But your problem, though, is silence hurts you. In a sense, the more effective it is, the more silence it could be, Your Honor. And that's I understand that assertion. And so, you know, there is there is a distribution issue. I think if if an employer walks out into the parking lot and says, you know, I promise you 100% wage increases, but there's nobody around, have they committed an 81 violation? And I think so. There's got to be some evidence that there was a communication here. But even if you deem that there's definitely communication, it's on the it's on the company site. So, yeah, I mean, there's no question that there's it's out there for all the employees to see. So what's another thing that's I'm sorry, Judge Gregory. Go ahead. Another thing that seems weird about this case to me is, you know, there's this other litigation or that seems to be the big, big, more important matter about whether or not there was improprieties in the union election. And that's that they were, I guess they were found to have existed. And this is just odd to me. We got that big, important issue. And this seems to be kind of a I don't mean to belittle the importance of it because threatening. I mean, maybe that's just the facts procedural where we are. But this is about whether you put something post something in a room somewhere. It seems kind of what's what's is there some story that I'm not understanding that matters or is in the record? I'm not sure if it's in the record, but it is in the record that there is this other case out there. And so and I think you can take notice of the fact that the board has in that case relied on the fact that there was a post election unfair labor practice as part of their assertion that there should be a order entered against garden trucking. And so that's really where this comes in. So if in theory we were to rule your way, would that undermine the decision that has been made that your client engaged in improper election activity? It wouldn't change anything about what they had done, whether they had committed those unfair labor practices or objectionable conduct, but it might go to the remedy. And what the typical remedy for the board is it's to order a new election. And one of the reasons that the General Counsel has argued that's not appropriate here is that the employer allegedly engaged in this unfair labor practice subsequent to the election. So it does kind of tie back into that. I do think your honor that another thing to keep in mind here is that the First Amendment is an overlay on all of this. And so that the cases, the Federalist case out of the Third Circuit, of course Crown, Cork and Seal you're familiar with, and Gissel as the board cites, all talk about this balance of how do we protect speech and yet still allow enforcement of this act. And I think that what that really emphasizes in our facts is that it should be the board's burden to come in and put on the case that they didn't put on, which is that this was in fact a threat. And to fail to do that is to allow the board to essentially have this presumption of a threat in a context where it is pure speech for sure that we're trying to regulate here. And so I think that the the totality of the circumstances show that it doesn't meet the true threat case. We did not mention in our brief, but I will go ahead and mention to you now for what it's worth, the Counterman versus Colorado case from 2023. And I think that you know that's been mentioned in some interrogation contexts in other cases. But the point being that the when we're talking about defamation or incitement or things that we're going to put in that box of not protected by the First Amendment, we want to have some standard that the the person that wants to punish speech meets. And our argument, your honors, is that it was not met here. All right, thank you. Hold on a minute. Yes, sir. Thank you, your honor. Mr. Laurel, ask you something off of that, Mr. Laurel. Of course, your honor. When you look at this statement that we're talking about, you don't have a problem, as I gather, with these worthless pieces of statements that these worthless pieces of trash put in the paper they handed out as pure horse shit for them to say they have anything to do with the race for you is nothing but a lie. Um, you know, that language doesn't bother you, does it? That's correct, your honor. Or at least I should say the board. The board is not finding the language you just quoted was a violation. But I mean, if it wasn't for this, if it wasn't for this final sentence, you'd be okay with what this what was said. Well, that's right in that there's nothing in the board's decision. Put the put the microphones close. Yes, your honor. Can you hear me now? Thank you. Sorry. What you just said is correct. It's that last sentence that crosses the line from protected speech to a threat that is unlawful under Section 801 and substantial evidence looking at both the statement itself that blame the union statement and the context supports the board's finding. And as was discussed this morning, so you're saying that the rest of it adds context to the last sentence. It may add context, but the board made clear in the judge's analysis that the employer had a right to respond to the flyer and had no problem with what I call the employer's responsive, you know, substantive rebuttal to the union's claim that it had an impact on the wages. These cases always raise a question in my mind about the tension between the National Labor Relations Act and the the First Amendment because democracy functions best and elections function best when you have the different sides to an election go at it with with uninhibited speech and certainly that's the way that these, that most elections work. Now, you know, here you have a question of labor organizing, but we have a statute that limits what people can say. And so how do you navigate, how do we navigate what the board wants to do with its unfair labor practice, jurisprudence, and the presumption that in a democratic society, vigorous speech on both sides of the issue is not only permitted but encouraged. And I have always found this tension between the First Amendment and the union certification elections to be a difficult one for me. And how do you, how do you, how do you, how do you navigate it? I mean, if I were to look on one side of it, I'd say, all right, this is a man who, who, he owns a small company and he's convinced that having a labor union in this company is gonna mean the end of his business as he knows it. And he may be right or he may be wrong. You know, I don't know, but that's, that's his view that it's, this is an existential issue for this man. And shouldn't we, shouldn't we allow a good deal of sort of rough-and-tumble speech in those kinds of things. If a company's fighting for its life as it sees it, it may be wrong. Right, I understand your question, Your Honor, and it is important to have that balance. And here's how that works as I understand it. One good thing here is my opponent and I agree, when you look at page 16 of their brief, that the way the First Amendment is protected here is that under the First Amendment in Section 8C, you have a right to speak, to state your opinions, as you were just discussing with the company here, so long as you don't cross the line into a threat. But threats under Section 81 are not protected under the First Amendment under Section 8C. That's what my opponent agrees with on page 16 of their brief, that's what the Supreme Court said in Gissel, and that's the binding dispositive Supreme Court precedent on harmonizing the protections of the First Amendment with the prohibitions on threats under Section 8A1. And as the Supreme Court explained in Gissel, it's also working in the employees' right to associate, including through unions. Counsel, go ahead and finish your answer. I just wanted to say, you raise an important point. Can't the employers speak? And one might even say, aren't employees informed by having their employers speak? And the answer is, the board allowed the employer to speak here and you said so. When you look at the statement, the claim that the union was lying when it said it should get credit for these raises, that wasn't a violation. He's saying, in effect, to the employees, look, you're going to do better without the union. And employers say that all the time, in one way or another. And that's the heart of their case. And you know, this speech was coarse, it was rough, and at the end, there's a link there that you wish were not there, and it was made too explicit by somebody who's probably not well-versed in labor law. But what he's saying, in effect, is, look, you're going to do better without the union. This is a better path for you to take. And when we, I certainly understand your point of view, but what I'm wondering is whether we are sort of circumscribing the right of an employer to say to the employees, in terms of your economic well-being, we can take care of you, and you will do better without the union. And that's the burden of his case, is that you're going to be better off without the union. He didn't, you know, it would have been much better if he'd said it less explicitly, but that's the point he's trying to get across. And I just worry about, at a certain point, the NRA chilling employers' ability to make that basic point, and that is that your economic well-being lies in what you know, and without the union. So could, it has troubled me a long time, so help me out. Sure. Thank you, Your Honor. The first thing I want to say is, this decision, which is narrow, leaves intact what you want, which is for the employer to be able to say, you're better off without a union, economically or otherwise, I think they're liars, they don't have any control over wages. All of that stuff the employer said here was fine. The problem with the last part is, when you get to the point, as the board reasonably found, that the statement here suggested to employees, reasonably viewing it, that they would face reprisal if the union continued to organize on their behalf. That's not, you said that, that's not what the, that's not what the ALJ said. The ALJ, and if that was the case, that might, that would, you know, be more reasonable. Maybe it's reasonable, but what the ALJ says at JA 110 is that any delay that the employees encountered, it's looking backwards. His language is past tense, and that they, that the employees were paying, were paying a price for their union activities. As I look at the statement, the best case, kind of follow up on Judge Wilkinson, I mean, there's a little concern that you're pulling out one and a half lines out of ten or so lines, most of which is okay, and doesn't that tell us that this really isn't the threat you're talking about? And then, to the extent you're saying it is, the ALJ didn't say, hey, the message is in the future you'll face delays, or in the future you'll face reprisals. It's saying that you, any delays you did receive were caused by this, and there's nothing about anything ever happening in the way of delays or anything like that. So it, yeah, I don't know if, what to make of that, but I don't see how the ALJ's argument is meeting, is matching up. Your, your brief and your argument seems to me to be interpreting the statement different than the ALJ decision did, and the board didn't do anything but affirm it, so that's all we got. Well, a couple, a couple things, Your Honor. One is, I'm not sure how many lines it takes to constitute an unlawful threat. It can be done fairly quickly, and it was done here. That line and a half was enough because it said, I blame the union for any raise delays here, any delays and raises. And the other thing I want to point out, because I think this gets to something I should clarify, my opponent's argument is it'd be illogical to feel that you were threatened about delays and raises because, in the company's view, employees know they had already timely received every raise they could get, but if we point out in our brief and the record shows, employees did not know that. In fact, if you look at page 16 of our brief, this is in the joint appendix at page 33 and 44, employees were asked, what do you know about the process of these raises being given? And one employee said, I don't know, nobody knows. The employees didn't know. The other employee witness, former employee who testified, said the same thing. Now, I understand the logic of my opponent's argument. If they could show employees knew there hadn't been a delay, they've got nothing to worry about, then maybe this post would seem nonsensical, but they didn't know that. So their argument is based on a fallacy, and I think another fallacy here is the timing, and Your Honors addressed this this morning. There's no law saying employees' rights dissipate as soon as the election is over. And here, after the election, what we had was a hotly contested representational issue, where the union felt that the employer had engaged in illegal conduct, invalidating the election. It was litigating that issue, and it was continuing the campaign. What kind of live testimony was there before the ALJ, and what kind of, what was the evidence before the board, and in what form did it come in? Well, in this case, the substantial evidence supporting the board's view that this wasn't a lawful threat. Okay, well, what informed the board's views? Give me a sense of the record. Sure. We have the content of the statement itself. It's a blame the union statement, and similar statements have been held to be unlawful. We have the context. It's not like the election's over, so employees aren't making a choice, or engaging in protected rights, or the union's not involved. They're continuing the campaign, and in that context, the company's owner, the one who has control over your wages, if you're an employee, is telling you, I blame the union if your raises have been delayed. And it does suggest to a reasonable employee, which we always go back to. You're giving us your position. Judge Wilkinson asked, what's the evidence? And all it seems like you're doing is telling us why the statement shows that threat. I get that argument, but I think he's saying, what did the ALJ have before it? Did it have witnesses who said this, that, and the other? There were witnesses, and I was just explaining, as to the assumption that this can't be a threat because raises had been timely provided, we had testimony that employees had received their raise before and after the campaign, but there was nothing saying, for example, that there was a regular schedule, so the employees could figure out for themselves, oh yeah, I've gotten what I've entitled to in a timely manner. Instead, there was evidence that the employees didn't know whether their raises had been timely paid. Maybe in the past, they were already delayed. Maybe they had already suffered. Where does the board say all, where's the ALJ say all these things you're saying? He says it was unlawful to blame the union for this post, and he says employees would reasonably worry that they had paid a price for the union supporting them, and I think it's fair to say, you can always look on this record. What would a reasonable employee think? And they might also wonder, does this mean future raises might be delayed or disappear? But that's not what the ALJ said, correct? You could make that argument, and you might be right, but the ALJ didn't say, you know, there's a worry about how they would view future wages. No, no, I understand that. One thing I need to do, Your Honor, and I didn't mean to cut you off, but I think this is important. When my opponent makes an argument, I do need to respond on behalf of the agency when they have this view. It's an alternative view. As Your Honor's pointed out, they have to show that the board's view is unreasonable, unsupported. No reasonable person could reach that view. But their view is, it can't be a threat that a wage raise had been delayed because they already knew they timely got it, but as I was explaining, they don't know that. And then, in that view, you have to look at what a reasonable employee would think, even if the board didn't expressly say, part of the potential coercion here is also, maybe I'll lose future wages. That is something you have to look at. I mean, that's just part of the context. So what do you do, we don't necessarily have them in this context. I mean, if we're, if that's what the ALJ's thinking, you know, in other administrative contexts and in other, I look at review, we sometimes say, hey, you got to give us enough to explanation so that we can understand something. And does how we, does our opinions in, say, immigration cases or sentencing cases that talk about, you Your Honor, there, I see your point and there is sufficient explanation. Is that a yes or a no? Does that, does that, any of that will apply or inform us here? You are looking at what the, whether the board's decision is supported by substantial evidence. And I'm saying it is, because what the judge found is that employees would reasonably fear that wage raises had already been delayed. And you're right, that's what the board said, and that's enough to find a violation here, because that view is supported. My opponent's alternative view, that employees would just see this as hyperbole, is not, and therefore the court should affirm. I do think you can look at the context, but to answer your question, even if we're just looking at the past, and the judge found employees would reasonably fear that their past raises, the raises they had already received, had been delayed. I guess you're, I think the point that Judge Qualbaum raises is a very good one. And as to the past-future problem, and the question that the ALJ was focused on the past, I suppose the response that you would make on that is that it is making a general statement about the fact that the way that wages are going to depend, that you have to look at this, and that he's saying really that you would already have your wages, but that he's sending a shot across the bow, and implicit in the statement is, yeah, and for purposes of the future, if you want your raises, you better stay clear of the union, and so that the implicit, the implicit threat of a future withholding of wages, you know, the threat is implicit in this statement, and that the, that the impact of the statement would not be lost on anyone when he's a part owner of the country, of the company, and has responsibility, at least partial responsibility for whether wages are forthcoming or not, that he's making a, he's making a general statement about the fact that wages are going to be related to the presence or absence of this union. I think that's right, Your Honor. What he said is reasonably viewed as a threat of reprisal for union activity, and that's unlawful under settled law, and I know one can debate could the statement be viewed this way, could the statement be viewed that way, but substantial evidence supports the board's reasonable view that employees would take this as threatening, and because it's a threat, it's not protected. In Gissel, the Supreme Court balanced the First Amendment. Well, it's, you know, it's troublesome because you, I mean, I think this fellow may have stepped over the line, but the board's awfully close to the line in depriving companies of the ability to say, economically, you folks are going to be better off without a union, and that's an argument that the employees should be allowed to hear, and they should be able to weigh the benefits of a union and union membership, or the benefits of going without one. I mean, you want them to have full information, and it may be correct, or it may not be, that the employees would be better off without a union. I don't know the answer to that, you know, that's a matter of speculation, but it's to the benefit of the employees to know that their lives may be better off without the union, and then the union can make the idea, no, you can make the point that your lives are going to be better with the union, and just let the two sides have at it without handcuffing one side. That's, you know, that's my concern, and it's a real, when we climb out of the rarified courtrooms, appellate courtrooms, and get down to what the gritty going on is in these union certification elections, it's pretty bare knuckle stuff, but you know, that's the way sometimes elections transpire in this country. There's nothing particularly pristine about it, and I just want to make sure that the employees are getting a full airing of each side of the argument. And so, you've got some very good points on your side. I understand that. I understand the standard of review. I understand what we're saying about coercion and the long line of precedents that discourage the link between wage increases and union presence if the link is made too explicitly, but the other side has a point too, and their point is a very basic free speech point, and that is that we have the right to make our case in an unvarnished way, and this statement is as crude as it can be, but, you know, a lot of times that's the lingo in these elections. You yourself know that, and you just, I don't want to, you know, they have a point too, I mean, about not having these elections subject to judicial so, you know, it would be nice if everybody recognized that there's a real problem here, I don't expect you to agree with me, and I don't expect this gentleman to agree with me. I agree with what a lot of what you just said, your honor, and I know my time is up, but if I might just leave you with two thoughts, I agree, employees are informed in free elections by free speech and being informed, we want them to be informed, not threatened, it's for the board in the first instance to draw that line, and here, as to everything you said that companies should be allowed to say about the benefits or detriments of unionization, the board gave the employer a lot of leeway here, look at all the things in the statement that aren't an issue, calling the union full of lies, hoarse, SHIT, useless idiots, and they can make its case that we, the company, give you raises, not the union, and so they're free to make their case, just not to cross the line of threatened employees, because that's not helpful in a knowledge. Okay, hold on before you sit down. Chief, do you have any questions that you'd like to ask this gentleman? I did, but I forgot them. No, I'm just kidding. No, I'm just saying that I think that there is a balance, this scheme is by Congress, in terms of Congress wrote this, they felt this was needed for the people, and everybody knows there's an imbalance with power in terms of employers and employees, and the question is, Judge Qualtermann, I think Judge Wilkinson addressed the point I was going to make, but Judge Qualtermann, the reason why ALJ was speaking in the past is because he was using the past as an example, this is what it might look like if you have a future relationship, it had an impact on a delay of your getting wages. That's the coercive part, and the hypo you gave Judge Wilkinson about the person who's in dire need, you could explain that, but you couldn't say, no matter how existential it is, that's the word you used, you can't say, if you unionize, I'm going to have to close this plant. That clearly would be a violation, but it's the existential truth, perhaps, or what the bottom line could be, but that's the balance that Congress reached in terms of regulatory scheme, and here, I think it's, and you don't have to show anybody was actually coerced, that's not required in terms of evidence, so I just don't see how, it's not a reasonable conclusion that this is coercive as to what impact it may have on your wages, I think that's what Congress is meant to do, and I appreciate the angst we may have, but I think in terms of our role as a court adjudicating it, it seems to be, I think. I think that's right, Your Honor. It's the balance struck by Congress as acknowledged authoritatively by the Supreme Court, so unless Your Honors have further questions, I thank you for your time now. I would appreciate your argument, unless you have some rebuttal time, Mr. Tower. You know, these precedents and these standards of review, that's a mountain of law to overlook. I understand, Your Honor. I think that one thing that counsel said in response to a question, I believe, was that this was a narrow decision, and that's one place where we do disagree, because I think this, it is in trying to lump this case into those cases where the facts showed that an employer was talking about . . . The problem with this statement is there's nothing that's particular, this last sentence, there's nothing that's especially subtle about it. It's right up there. Listen, folks, if you want to get raises in the future, steer clear of this. It doesn't leave much to guesswork. Well, and Your Honor, I think our position is that the context of an election that took place over a year prior, the union issuing a statement that said, we somehow got you these raises that had just occurred, and the sort of granted hyperbolic response from the company management is to say that you would have had your raises already, that that might lead to an implication in some other context that there was some direct threat or true threat of future harm. But to lump this into those cases where the employer came in and said, if you unionize, we're going to treat you poorly, we're going to deny you raises, delay really what we have here is the NLRB turning the standard upside down. Counsel said that, first off, it's undisputed. The undisputed evidence was that the employees got raises before and after the election and that there were no delays. But the board is saying that's not good enough. You have to show now, apparently, that all employees knew that that was the case. There was only one witness that the general counsel called. There were not many witnesses in the case at all. But the point being that that standard can't possibly be the case. If the employer puts on undisputed evidence of the fact of what happened, which is that there were no delays, then that is part of the totality of the circumstances you can consider in deciding whether or not it was reasonable to construe this as a threat. And it's not just about the NLRA. It is the First Amendment. And the First Amendment is not subject to Congress's delegation to the agency of these decisions. And so you can decide that that First Amendment protection requires more. And then lastly, I would absolutely say we certainly believe we should win on the merits in this case. But it is true that the ALJ decision stamped by the board does not offer any of this explanation that is being offered in the argument today by counsel. And so that's another reason for sending it back. All right. Thank you. Thank you. Thank you both. We've come down and agreed counsel and then we'll move right into our final case.
judges: J. Harvie Wilkinson III, Roger L. Gregory, A. Marvin Quattlebaum Jr.